UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESS'NN A. AUBERT,<br><br>           Plaintiff,<br><br>     v.<br><br>E. MADRUGA, et al.,<br><br>           Defendants. | 1:13-cv-01659-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT BE DENIED EXCEPT AS TO THE CLAIM FOR INJUNCTIVE RELIEF<br>(ECF Nos. 28, 42.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

I.   **BACKGROUND**

Ess'nn A. Aubert ("Plaintiff") is a state prisoner proceeding *pro se* and in *forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on October 15, 2013. (ECF No. 1.) On May 21, 2014, this Court[1] ordered that Plaintiff's case proceed on his original Complaint, against defendants Correctional Officer (C/O) B. Hobbs and C/O E. Madruga (hereinafter jointly referred to as "Defendants"), for use of excessive force in violation of the Eighth Amendment. (ECF No. 11.) All other claims and defendants were dismissed from this action. (Id.)

---

[1] The May 21, 2014, order was issued by Magistrate Judge Gary S. Austin when he was assigned to this case.

On July 10, 2015, Plaintiff filed a motion for summary judgment. (ECF No. 28.) On October 30, 2015, Defendants filed a cross-motion for summary judgment.[2] (ECF No. 42.) Defendants opposed Plaintiff's motion for summary judgment on October 30, 2015. (ECF No. 44.) On January 12, 2016, Plaintiff filed an opposition to Defendants' cross-motion. (ECF No. 49.) On January 19, 2016, Defendants filed a reply to Plaintiff's opposition. (ECF No. 50.)

The parties' cross-motions for summary judgment are now before the Court. Local Rule 230(*l*). For the reasons that follow, the Court recommends that Plaintiff's motion and Defendants' cross-motion be denied. In short, genuine disputes of material fact preclude summary judgment for either party on the excessive force claim and for Defendants on the qualified immunity claim. In addition, Plaintiff's request for injunctive relief is subject to dismissal.

## II. PLAINTIFF'S CLAIMS

Plaintiff alleges that on February 6, 2013, while being escorted to the Administrative Segregation Unit ("ASU") by Defendants Madruga and Hobbs, he was subjected to an unprovoked beating by Defendants Madruga and Hobbs, in apparent retaliation for prior rule violations involving female officers and assaults on staff, as well as for a pending lawsuit Plaintiff had filed. (Complaint, ECF No. 1; Plaintiff's Motion for Summary Judgment, ECF No. 28; Declaration of Erick J. Rhoan ("Rhoan Dec."), Ex. A (Plaintiff's Depo.) at 30:6-38:8.) Plaintiff alleges that once the parties arrived at the ASU back door gated area, Defendant Madruga ordered the tower officer to close the ASU's back door.

Plaintiff allegedly asked why the back door was being closed, to which Defendant Hobbs responded by pressing Plaintiff against the gate using the full force of his body weight. Defendant Madruga allegedly then told Plaintiff not to worry about it, to which Defendant Hobbs added "yeah, you wasn't worried about disrespecting female staff, you weren't worried about attacking staff . . . ." (ECF No. 1 at 5.) Then officer Madruga stated, " . . .and you Damn [*sic*] sure wasn't worried about playing with staff's life, by filing law suits, and now we're not about to give a f**k about your life." (Id.) Plaintiff then alleges that he asked for the Lieutenant because he felt his

---

[2] Concurrently with their cross-motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (ECF No. 42-15.).

2

life was in danger, and at that point Defendant Madruga grabbed Plaintiff by the throat and started to punch the left and right sides of his face.  Plaintiff also alleges that at some point he was placed in a chokehold that caused him to lose consciousness.

Plaintiff claims he suffered a black eye "with a small ball of some sort in the upper socket area of the eye," a bloody nose, scrape marks on the left side of his forehead, abrasions to the right side of his face, fractured ribs, and nerve damage to his right hand "due to the handcuffs tightening around [his] wrist."  (ECF No. 1 at 4; ECF No. 28 at 8.)

In his Complaint, in addition to an award of compensatory and punitive damages, Plaintiff also requested an order clearing the "Rule [*sic*] violation report" from his file.  (ECF No. 1 at 3.)

## III.     SUMMARY OF DISPUTED FACTS[3]

Defendants' recitation of the facts at issue here differs greatly from the version presented by Plaintiff.  According to Defendants, neither of the Defendants reviewed Plaintiff's Central File or disciplinary history prior to the escort, nor had knowledge of Plaintiff's prior inmate litigation history against other correctional officers.  (Defendants' Statement of Undisputed Facts ("DSUF") at ¶10-11; Defendants' Statement of Disputed Facts ("DSF") at ¶10-11.)  Both Defendants also denied knowledge of any discipline that Plaintiff received based on improper interactions between himself and other correctional staff.  (DSUF at ¶12; DSF at ¶12.)

It is also Defendants' contention that the use of force against Plaintiff was provoked when Plaintiff spit on Defendant Madruga.  (DSUF at ¶¶39-40; DSF at ¶¶40-41.)  According to Defendants, Plaintiff became agitated during the escort because he was not allowed to use the restroom and began calling Defendants the N-word and making statements such as "I swear to God these [N-word]s don't know who the fuck I am," and "I'm a crip, [N-word], y'all don't even know what I could do." (DSUF at ¶¶14-17; DSF at ¶¶14-17.)  While Defendant Madruga ordered Plaintiff to stop making those types of comments, Plaintiff's level of frustration only intensified.  (DSUF at ¶18; DSF at ¶18.)  It is Defendants' contention that Plaintiff subsequently also became

---

[3] This summary does not include all of the disputed facts at issue.  As discussed below, it is sufficient that the Court has found that questions of material fact exist as to whether the use of force was provoked.  While there are additional disputes on both sides, including but not limited to disputes as to the extent of injuries suffered by the parties, it unnecessary here to address all of the disputed facts to make a determination that summary judgment should be denied.  (See Hudson, 503 U.S. 1; First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968).

3

displeased about the manner in which Defendant Madruga was unloading Plaintiff's property boxes, and continued stating profanities, eventually spitting on Defendant Madruga's chest after being ordered to be quiet. (DSUF at ¶¶29-40; DSF at ¶¶30-41.)

Defendants therefore contend that it was Plaintiff's actions -- more specifically Plaintiff's act of spitting on Defendant Madruga -- that prompted the use of force. Defendant Madruga thus proceeded to grab hold of Plaintiff's shirt collar and ordered Plaintiff to get on the ground, pulling Plaintiff straight down until his head was at the level of Defendant Madruga's midsection. (DSUF at ¶¶41-42; DSF at ¶¶42-43.) Plaintiff then allegedly stepped forward and rammed his head into Defendant Madruga's midsection. (DSUF at ¶43; DSF at ¶44.) Defendant Madruga then attempted to pull Plaintiff to the ground, but Plaintiff's hands were gripping the chain-link fence of the back gate. (DSUF at ¶44; DSF at ¶45.) Once Defendant Hobbs was able to free Plaintiff's grip from the fence, both Defendant Madruga and Plaintiff fell to the ground. (DSUF at ¶¶45-50; DSF at ¶¶46-51.) Plaintiff allegedly landed on the concrete on his left shoulder and the left side of his face, and Defendant Madruga landed on top of him. (DSUF at ¶50; DSF at ¶51.) Plaintiff then allegedly tried to roll over from his chest onto his left side, but Defendant Madruga placed his hands on each side of Plaintiff's head to control his head movements, and Defendant Hobbs used his hands, knees, and body weight to control Plaintiff's bodily movements. (DSUF at ¶51; DSF at ¶52.)

Defendants claim that throughout the struggle, Defendant Madruga gave Plaintiff several orders to stop resisting and be still, but Plaintiff failed to comply and attempted to actively get up and physically resist Defendants' efforts. (DSUF at ¶¶52-54; DSF at ¶¶53-55.) Plaintiff's continued resistance was also allegedly witnessed by several responding correctional officers. (DSUF at ¶55; DSF at ¶56.) Defendants claim that at one point during the struggle, as other officers approached to aid Defendants, Defendant Madruga requested a spit mask. (DSUF at ¶60; DSF at ¶61.) One was provided, Officers Mejinez and Moody assisted Defendants in placing it on Plaintiff's head. (DSUF at ¶¶61-62; DSF at ¶62-63.) Defendants contend that during the final moments of the struggle, Defendant Madruga saw that Plaintiff was still conscious because Plaintiff's body continued to move and because he was also able to see Plaintiff's mouth moving

through the fabric of the spit mask because it had been applied incorrectly.  (DSUF at ¶¶63-65; DSF at ¶¶64-66.)  Plaintiff was allegedly yelling profanities at Defendants.  (DSUF at ¶65; DSF at ¶66.)  Defendants claim that as ASU medical staff began converging on the back entrance area, Plaintiff stopped moving.  (DSUF at ¶66; DSF at ¶67.)  It is Defendants' contention, however, that Plaintiff was feigning unconsciousness.  (DSUF at ¶¶67, 75-77; DSF at ¶¶ 68, 76-78; ECF No. 42-1 at 4:22-24, 10:2-3, 11:28-12:2.)  Defendants also assert that Plaintiff's injuries as a result of the incident were *de minimis* as compared to the injuries suffered by Defendants.  (ECF No. 42-1 at 11:19-23.)

### IV.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  Defendant does not bear the burden of proof at trial and, in

moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  Additionally, Plaintiff is entitled to liberal construction of his filings because he is a prisoner proceeding *pro se*.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted).

**V.    DISCUSSION**

    **A.    Undisputed Facts Relevant to the Parties' Cross-Motions** [4]

Although there are many facts which the parties seem to agree on, or that are otherwise undisputed by Plaintiff, the only undisputed facts material to the determination of the parties' cross-motions for summary judgment are as follows: (1) at one point during Plaintiff's escort to ASU on February 6, 2013, Defendants employed physical force against Plaintiff whose hands were restrained behind his back in handcuffs (ECF No. 28 at 6; DSUF at ¶5); (2) no other inmates or correctional officers were in the area to witness the events that prompted Defendants' use of force against Plaintiff on February 6, 2013 (DSUF at ¶21; Anders Decl. at ¶¶4-5; Plaintiff's Depo. 17:14-18:14); (3) Plaintiff was injured as a result of the incident on February 6, 2013, and suffered a laceration to his left eyebrow, blacked left eye, bloody nose, left forehead scrapes, and right side facial abrasions (DSUF at ¶88; Plaintiff Depo. 50:20-51:4, 54:7-54:21, 55:25-56:23); (4) although

---

[4] As Defendants note, Plaintiff did not comply with the rules in preparing his opposition to Defendants' motion for summary judgment, including by failing to dispute or admit to the itemized facts in Defendants' Statement of Undisputed Facts.  Local Rule 260(b).  As a result, Defendants' statement of undisputed facts is accepted for purposes of making a determination on the parties' cross-motions except where brought into dispute by Plaintiff's verified Complaint, deposition testimony, and verified declarations, partially verified opposition and his motion, signed under penalty of perjury.  See Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).  Plaintiff's complaint is verified and functions as a declaration to the extent the allegations are based on personal knowledge of facts admissible in evidence.  Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

Plaintiff received numerous x-rays of his body, including his *ribs* (DSUF at ¶86; Plaintiff Depo. 46:16-46:22), the evidence only shows that "X-rays of Plaintiff's *face, head, and spine*, came back clear, within normal limits and no broken bones" (Cagney Decl. ¶¶ 13-14, Exs. B-C; Plaintiff Depo. 54:9-54-13); (5) Defendants Madruga and Hobbs lack the authority to expunge or otherwise remove the rule violation from Plaintiff's file (DSUF at ¶94; Aubert Depo. 113:2-13); and (6) Plaintiff's Central File contains Rules Violation Reports ("RVR") and disciplinary charges other than the RVR that resulted from the incident (Plaintiff's Depo. 110:13-17).

The remaining facts are either disputed or are not material to the determination of Plaintiff's claims at this juncture. It should be noted however, that while Defendants argue that the use of force against Plaintiff was provoked and dispute that Plaintiff lost consciousness as a result of their use of force, it is undisputed that Officer Mejinez, who approached the scene of the incident to assist Defendants, recalls hearing Plaintiff say that he could not breathe or something to that effect. (Mejinez Dec. ¶5.) It is further undisputed that Plaintiff stopped moving at some point during the incident, and was unresponsive to Nurse Cagney's examination. (DSUF at ¶74.)

### B. Eighth Amendment Excessive Force Claim

#### 1. Legal Standard

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also, Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of

7

a sort 'repugnant to the conscience of mankind.'" Id. at 9-10 (internal quotation marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

**2.    Findings**

On summary judgment, it is not the job of the Court to resolve disputed issues of fact, but rather to determine whether there are true triable issues of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The parties here, through their verified statements, present two very different versions of the same incident. At the heart of their dispute is not only whether Defendants' use of force against Plaintiff on February 6, 2013, was excessive, but whether it was warranted. Here the undisputed facts show that no one other than the parties in this action were in the area to witness the events that prompted Defendants' use of force. (DSUF at ¶21; Anders Decl. at ¶¶4-5). The matter thus comes down to a question of credibility, which is not for the Court to resolve, making a grant of summary judgment on the issue of excessive force inappropriate for either party. Anderson, 477 U.S. at 249-50.

Defendants, however, argue that this Court should apply the principles of Scott v. Harris, 550 U.S. 372, 380 (2007), and reject Plaintiff's version of the events. However, Defendants' reliance on the U.S. Supreme Court's decision in Scott is misplaced. While Scott indeed held that Courts should not adopt versions of events that are "blatantly contradicted by the record," the record here does not reflect such a blatant contradiction of events. Id.

///

In Scott, the Court had no choice but to reject the respondent's version of events because there was "an added wrinkle in [the] case: existence in the record of a videotape capturing the events in question," which blatantly contradicted the respondent's version of events. Scott, 550 U.S. at 378. Such smoking gun evidence is absent here. In fact, while multiple declarations were submitted in support of Defendants' motion, none effectively negate Plaintiff's version of the events and his allegation that he was assaulted by Defendants without provocation. (See DSUF at ¶21; Anders Decl. at ¶¶4-5.) With the exception of the declarations submitted by the parties to this case, no affiant claims to have actually witnessed the events that precipitated Plaintiff's injuries. (Id.) Nonetheless, in the absence of direct evidence contradicting Plaintiff's version of events, Defendants rely on inferences drawn from the record to assert that Plaintiff's rendition of the events could not have occurred. However, not only are the inferences Defendants urge this Court to draw inappropriate for summary judgment, but they raise questions about Plaintiff's credibility, which is an issue reserved for trial. Anderson, 477 U.S. at 249.

For example, while Defendants contend that they were justified in their use of force because Plaintiff spit on Defendant Madruga -- a fact they assert is supported by the Declarations of Officers Moody and Mejinez who assisted Defendants in placing the spit mask over Plaintiff's head (Moody Decl. at ¶7; Mejinez Decl. at ¶7), and by the presence of a spit mask in the photos taken of Plaintiff's injuries (see ECF No. 42-1 at 9:17-22; Plaintiff's Depo. at 114:15-116:2; ECF No. 28, Ex. D at 46-48) -- no affiant other than Defendants claims to have actually witnessed Plaintiff spit at anyone or anything. (ECF No. 42-1 at 9:6-16.) Thus, neither Plaintiff's version of events, nor his assertion that he did not spit on Defendant Madruga, are negated by the fact that Officers Moody and Mejinez assisted in placing a spit mask over Plaintiff's head, or by the presence of a spit mask in the photographs.

Similarly, while a photograph of the area where Plaintiff's spit allegedly landed on Defendant Madruga's shirt was attached as Exhibit B to the Declaration of Martin in support of Defendants' motion, the picture itself, while clear, does not clearly show any evidence of spit or moisture on Defendant Madruga's shirt. (Martin Decl., Exh. B.) However, even if it did, it would at most address the question of whether the use of force was necessary, leaving the question of

9

whether the use of force was excessive unanswered.  More importantly, these inferences, even when drawn, fail to completely and "blatantly" negate Plaintiff's version of the events as is required by the exception in Scott.  Consequently, since Defendants have failed to cite authority applying the summary judgment exception in Scott to incidents not recorded on videotape -- and since to this Court's knowledge, such authority does not exist -- it is the duty of this Court to draw all inferences in a light most favorable to the non-moving party, which for "qualified immunity cases . . . usually means adopting . . . the plaintiff's version of the facts." Scott, 550 U.S. at 378.

While it is true as Defendants argue, that the "absence of serious injury is . . . relevant to the Eighth Amendment inquiry," the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 7-8.  Defendants seem to misperceive the law in this regard.  The Eighth Amendment excessive force standard does not examine *de minimis* injury, but rather excludes from constitutional recognition *de minimis* use of physical force. Id. at 9-10; see also Oliver, 289 F. 3d at 628.

Plaintiff here claims that he was shoved against the ASU gated fence by Defendant Hobbs, punched several times by Defendant Madruga which resulted in lacerations to his face, and eventually placed in a chokehold until he lost consciousness.  (ECF No. 1 at 5; ECF No. 28; Plaintiff's Depo. 30:6-38:8.)  These allegations, if true would undoubtedly breach the Eighth Amendment threshold and constitute a use of sadistic force. See Hudson, 503 U.S. at 10 (holding that "blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, [were] not *de minimis* for Eighth Amendment purposes.)  Thus, if all inferences are drawn in favor of Plaintiff as required on summary judgment (Comite de Jornaleros de Redondo Beach, 657 F.3d at 942), and even if Plaintiff's injuries are deemed *de minimis* by a jury, they may nonetheless be sufficient to establish a violation of Plaintiff's Eighth Amendment rights if it is found that the use of force was unprovoked or otherwise sadistic and malicious in nature. Hudson, 503 U.S. at 7-8.

Based on the foregoing, this Court recommends the denial of both parties' motions for summary judgment on the issue of excessive force.

C. **Qualified Immunity**

1. **Legal Standard**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567, (2004) (Kennedy, J., dissenting)).

In determining whether an officer is entitled to qualified immunity, the Court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236. In resolving these issues, the Court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The measuring rod for determining whether an official's conduct violates a plaintiff's constitutional right was set forth by the Supreme Court in Ashcroft v. al-Kidd, [563 U.S. 731], 131 S.Ct. 3034, 179 L.Ed.2d 1149 (2011): "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Lal v. California, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted).

///

11

## 2. **Findings**

In their motion, Defendants assert that they are entitled to qualified immunity on the ground that "even if [they] violated Plaintiff's constitutional rights, they did so unknowingly," and "[i]t would not have been clear to a reasonable officer that Defendants' actions were unlawful." Although Defendants are correct in their iteration of the applicable standard, because this Court adopts Plaintiff's version of events (Scott, 550 U.S. at 380) which presents an unprovoked assault against Plaintiff, the "principle offered by the [Defendants] does not govern [Plaintiff's] claim." Felix v. McCarthy, 939 F.2d 699, 701 (9th Cir. 1991).

As noted by the Felix Court, "Meredith v. Arizona, 523 F.2d 481 (9th Cir.1975), provides the standard in this circuit for determining whether an officer's conduct constitutes excessive force." Felix, 939 F.2d at 701. In Meredith, the Court held that:

> "a reasonable correctional officer in California would have understood that he would violate the Constitution by delivering strong blows upon a prisoner for no purpose, using force that could be characterized as "intentional, unjustified, brutal, and offensive to human dignity."

Meredith, 523 F. 2d at 484. The Felix Court also cited to several other cases where this principle was adopted. (See Felix, 939 F.2d at 702, citing: King v. Blankenship, 636 F.2d 70, 72 (4th Cir.1980); Vargas v. Correa, 416 F.Supp. 266 (S.D.N.Y. 1976); and Wilson v. White, 656 F.Supp. 877, 879 (S.D.N.Y.1987).) Both Felix and Meredith, however, dealt with injuries less severe than those presented by Plaintiff herein. See Felix, 939 F.2d at 701; see also Meredith, 523 F. 2d at 482. Nonetheless, the Court in both cases found it sufficient that the "blows" to which plaintiffs therein were subjected were unprovoked and "for no purpose." Felix, 939 F.2d at 701-702; Meredith, 523 F. 2d at 484. Similarly here, even if Plaintiff's injuries were *de minimis* as argued by Defendants, the fact that there are genuine issues of fact as to whether the use of force against Plaintiff was unprovoked is by itself sufficient to deny Defendants' request for qualified immunity on summary judgment. Id.

Based on the foregoing, this Court recommends denial of Defendants' motion for summary judgment on the issues of qualified immunity.

### D. Injunctive Relief

Injunctive relief, whether temporary or permanent, "is an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22, (2008) (citation omitted). "A plaintiff seeking a[n] . . . injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. Id. at 22 (citation omitted).

Federal courts are courts of limited jurisdiction, and as a preliminary matter, the Court must have before it an actual case or controversy. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471(1982). Thus, "[a] federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda v. United States Immigration Serv., 753 F.2d 719, 727 (9th Cir.1985). The pendency of an action related to conduct by specific prison officials however, does in itself not give the Court jurisdiction over prison officials in general. Id.; see also Summers, 555 U.S. at 491–93; Mayfield, 599 F.3d at 969. Thus, the Court's jurisdiction is limited to the parties in pending action and to the viable legal claims upon which this action is proceeding. Id.

In his Complaint, Plaintiff pleads that he seeks the removal from his Central File of the Rules Violation Report ("RVR") related to the incident at issue here: RVR Log No. ASU-13-02-001. (ECF No. 1 at 3.) Plaintiff's deposition testimony also serves to clarify that he seeks injunctive relief from the Court to have the RVR expunged from his record because he fears that it will result in future injury and retaliation from other officers. (Plaintiff's Depo. at 108:16-113:1.) While Plaintiff does not address the issue in his motion for summary judgment nor in his opposition to Defendants' motion, Defendants argue in their motion that Plaintiff is not entitled to injunctive relief because those with the authority to expunge are not parties to the instant litigation.

13

At his deposition, Plaintiff admitted -- and it is undisputed -- that Defendants Madruga and Hobbs lack the authority to expunge or otherwise remove the RVR from his Central File. (DSUF at ¶94; Plaintiff's Depo. at 113:2-13.) Plaintiff, however, maintained in his testimony that "[Defendants] are officials." (Aubert Depo. 113:15.) Although it can only be inferred by Plaintiff's statement that he meant to clarify that Defendants had been sued in their official and individual capacities, even if this is true, the pendency of the present action does not automatically give the Court jurisdiction over all prison officials in general or over the expungement of rule violations from prisoner files at a given institution. See, Summers, 555 U.S. at 492-93; Mayfield, 599 F.3d at 969.

"A federal court may issue an injunction [only] if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." Zepeda, 753 F.2d at 727; Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969). Here, the Court lacks jurisdiction over "prison officials" whom Plaintiff seeks to compel to action regarding the expungement of RVR Log No. ASU-13-02-001 from his Central File, and thus cannot compel such officials to grant the requested relief. Plaintiff has not otherwise shown why Defendants herein are the appropriate parties for this relief, and in fact as noted above, has admitted that they are not. (DSUF at ¶94; Plaintiff's Depo. 113:2-13.)

Although Defendants do not raise the issue, an additional reason Plaintiff is not entitled to injunctive relief is because it would not remedy the claim upon which the action proceeds. Prison Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"). Under the PLRA, for the requested injunctive relief to be granted, the Court must find it "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Id. The Court must also give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." Id.

Here, Plaintiff claims that Defendants Hobbs and Madruga used excessive force against him in retaliation for information they ascertained about him from other RVRs in his Central File. (Plaintiff's Depo. at 108:25-11:12.) Expungement of the RVR not compensate him for his

14

excessive force claim. Thus, the requested relief is not sufficiently tailored to correct the violation of Plaintiff's Federal right. 18 U.S.C. § 3626(a)(1).

Therefore, for this reason, and the reasons discussed above, it is recommended that Plaintiff's request for injunctive relief be denied.

## VI. CONCLUSION AND RECOMMENDATIONS

As discussed herein, the Court finds that Plaintiff did not meet his burden on summary judgment in that he failed to affirmatively demonstrate that no reasonable trier of fact could find other than for him.

Defendants similarly have not met their burden on summary judgment on the issues of excessive force and qualified immunity in that they have failed to produce evidence that justifies the adoption of their version of the events at issue over that of Plaintiffs, and have thus also failed to establish an absence of evidence to support Plaintiff's case. Defendants are entitled, however, to dismissal of Plaintiff's claim for injunctive relief.

Accordingly, for the reasons set forth herein, the Court RECOMMENDS that:

1. Plaintiff's motion for summary judgment, filed on July 10, 2015, be DENIED; and
2. Defendants' cross-motion for summary judgment, filed on October 30, 2015, be DENIED except insofar as it requests striking Plaintiff's request for injunctive relief.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses, if any, are due within **fifteen (15) days** from the date the objections are filed. Local Rule 304(d).

\\
\\
\\
\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 16, 2016**              /s/ Erica P. Grosjean
                                            UNITED STATES MAGISTRATE JUDGE